IN THE SUPREME COURT OF NORTH CAROLINA

No. 188A19

Filed 28 February 2020

STATE OF NORTH CAROLINA

v.

JEFFERY MARTAEZ SIMPKINS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 826 S.E.2d 845 (N.C. Ct. App. 2019), vacating a judgment entered on 8 June 2017 by Judge Andrew Heath in Superior Court, Stanly County. Heard in the Supreme Court on 10 December 2019.

*Joshua H. Stein, Attorney General, by Alexandra M. Hightower, Assistant Attorney General, for the State.*

*Kimberly P. Hoppin, for defendant-appellee.*

EARLS, Justice.

On 4 July 2016, Jeffery Martaez Simpkins was arrested and charged with offenses related to his failure to maintain a valid driver's license. He was first tried in the district court of Stanly County, where he was convicted and sentenced to a 30-day suspended period of confinement with 18 months of supervised probation to include 24 hours of community service. He appealed to the Stanly County Superior Court, where he was tried before a jury without counsel and convicted. He was sentenced to two years of supervised probation with two consecutive active terms of

15 days to be served on weekends and holidays, and with two consecutive 60-day suspended sentences of incarceration. Simpkins appealed to the Court of Appeals. On appeal, he argued that the trial court failed to satisfy the requirements of N.C.G.S. § 15A-1242 (2019)[1] before allowing Simpkins to proceed pro se. In a divided opinion, the Court of Appeals majority agreed. The State conceded that Simpkins had not received the required colloquy before waiving counsel and the court concluded that Simpkins had not forfeited his right to counsel, which would have negated the need for the colloquy. *State v. Simpkins*, 826 S.E.2d 845, 845 (N.C. Ct. App. 2019). We affirm. The Court of Appeals was correct in holding that Simpkins did not forfeit his right to counsel and that the trial court was therefore required to ensure that Simpkins's waiver of counsel was knowing, intelligent, and voluntary.

Background

On 4 July 2016, Simpkins was arrested during a traffic stop after a local police officer ran his license plate and discovered that Simpkins had a suspended license

---

[1] The statute provides that:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:

> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
> (2) Understands and appreciates the consequences of this decision; and
> (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

and an arrest warrant. Simpkins appeared in Stanly County District Court on 16 August 2016. At some point during the proceedings in district court, the court noted on an unsigned waiver of counsel form that Simpkins refused to respond to the court's inquiry. The record also contains a waiver of counsel form, signed by the trial judge, with a handwritten note indicating that Simpkins refused to sign the form.[2] He was tried without counsel and convicted of resisting a public officer, failing to carry a registration card, and driving on a revoked license.

Simpkins then appealed to the Stanly County Superior Court for a new trial. There, Simpkins was charged with (1) failure to carry a registration card, (2) resisting a public officer, (3) driving with a revoked license, and (4) failure to exhibit or surrender a driver's license. The proceedings began at 9:41 a.m. on 7 June 2017. Simpkins appeared without counsel and, following a brief exchange during which Simpkins objected to the court's jurisdiction, the trial court examined him regarding his desire to waive his right to an attorney. During the examination, Simpkins stated that he "would like counsel that's not paid for by the State of North Carolina." The trial court interpreted this as a request to hire his own counsel, and the State objected

---

[2] Assuming that Mr. Simpkins waived his right to counsel in the district court, any waiver would no longer have been effective in the superior court proceedings. In addition to the long period of time between the two proceedings, Mr. Simpkins was charged with different crimes in superior court. *See State v. Anderson*, 215 N.C. App. 169, 171, 721 S.E.2d 233, 235 (2011), *aff'd per curiam* 365 N.C. 466, 722 S.E.2d 509 (2012) (defendant's district court waiver of counsel insufficient to constitute waiver for superior court trial where record does not demonstrate defendant was informed of the superior court charges at time of district court waiver). In any case, the only question before us is whether Simpkins forfeited, rather than waived, his right to counsel.

"unless he can obtain counsel in the next 15 minutes." The trial court called in standby counsel, found that Simpkins had waived his right to an attorney, and appointed standby counsel to assist Simpkins in his defense. At 10:00 a.m., the court allowed Simpkins and standby counsel to review the case together. From the beginning of the trial until the time the court determined that Simpkins had waived his right to an attorney and would proceed pro se, fewer than twenty minutes had passed.

As jury selection was beginning, standby counsel requested a bench conference and the court permitted the parties to discuss the possibility of a plea arrangement. The parties returned at 11:04 a.m., and the State reported that they were unable to reach a plea agreement. The trial court then asked Simpkins if he wished to continue with standby counsel, and Simpkins responded that he would waive his rights to standby counsel. The proceedings moved forward from that point with the jury returning at 11:10 a.m. Simpkins was ultimately convicted of failure to exhibit or surrender a license and of resisting a public officer. He was found not responsible for failure to carry a registration card. The charge for driving with a revoked license was dismissed before the jury was instructed on the law.

On appeal, Simpkins argued principally that the trial court erred by not thoroughly inquiring into his decision to proceed pro se. *Simpkins*, 826 S.E.2d at 846. The inquiry is required both by statute and by the state and federal constitutions to ensure that a defendant's waiver of the right to counsel is knowing, intelligent, and

voluntary. *See*, *e.g.*, *State v. Moore*, 362 N.C. 319, 322, 661 S.E.2d 722, 724 (2008) (stating requirement and quoting N.C.G.S. § 15A-1242). The State argued that the inquiry was not required because Simpkins forfeited, rather than waived, his right to counsel. *Simpkins*, 826 S.E.2d at 846. The Court of Appeals applied its own precedent, which had previously held that a defendant may lose the right to be represented by counsel through voluntary waiver or through forfeiture. *Id.* Comparing the facts below to prior cases in which the court had found forfeiture, the majority determined that Simpkins did not "engage[] in such serious misconduct as to warrant forfeiture of the right to counsel." *Id.* at 852 (quoting *State v. Blakeney*, 245 N.C. App. 452, 468, 782 S.E.2d 88, 98 (2016)) (alteration in original). The State appealed to this Court on the basis of the dissent, which concluded the opposite.

## Standard of Review

The right to counsel in a criminal proceeding is protected by both the federal and state constitutions. *See* U.S. Const. amend. VI; N.C. Const. art. I, §§ 19, 23. Our review is *de novo* in cases implicating constitutional rights. *See, e.g.*, *State v. Diaz*, 372 N.C. 493, 498, 831 S.E.2d 532, 536 (2019). Accordingly, we review *de novo* a trial court's determination that a defendant has either waived or forfeited the right to counsel. *Cf. Moore*, 362 N.C. at 321–26, 661 S.E.2d at 724–27 (reviewing *de novo* whether defendant was appropriately allowed to proceed without counsel after trial

court found waiver of right to counsel); *State v. Thomas*, 331 N.C. 671, 673–78, 417 S.E.2d 473, 475–78 (1992) (same).[3]

## Analysis

"A cardinal principle of the criminal law is that the sixth amendment to the United States Constitution requires that in a serious criminal prosecution the accused shall have the right to have the assistance of counsel for his defense." *State v. Hutchins*, 303 N.C. 321, 335, 279 S.E.2d 788, 797 (1981) (citations omitted). Even so, a criminal defendant may choose to forgo representation and "conduct his own defense." *Id.* at 337, 279 S.E.2d at 798. In such a case, the waiver "must be knowingly, intelligently, and voluntarily made." *Moore*, 362 N.C. at 326, 661 S.E.2d at 726 (quoting *Thomas*, 331 N.C. at 674, 417 S.E.2d at 476).

In the case below, the trial court determined that Simpkins had waived, rather than forfeited, counsel. When a defendant seeks to waive counsel and proceed pro se, the trial court must satisfy the requirements of N.C.G.S. § 15A-1242. *See State v. Pruitt*, 322 N.C. 600, 603, 369 S.E.2d 590, 592 (1988); *see also Moore*, 362 N.C. at 326, 661 S.E.2d at 727 (referencing "the 'thorough inquiry' mandated by N.C.G.S. § 15A-

---

[3] We note that the trial court below did not conclude that Simpkins forfeited his right to counsel. If it had, and had made findings of fact supporting that conclusion, then those findings would be entitled to deference. *See, e.g.*, *State v. Bowditch*, 364 N.C. 335, 340, 700 S.E.2d 1, 5 (2010). However, in this case the trial court did not make any findings of fact before concluding that Mr. Simpkins had waived his right to counsel. Finally, acceptance of our dissenting colleague's argument concerning the degree of deference to which a trial judge's forfeiture determinations should be afforded would effectively insulate those decisions from any meaningful appellate review.

1242 to ensure the defendant's decision to represent himself was knowingly, intelligently, and voluntarily made"). Given the significant importance of an accused's right to counsel, a defendant must "clearly and unequivocally" express a desire to proceed pro se before we will deem the right to be waived. *Thomas*, 331 N.C. at 673–74, 417 S.E.2d at 475 (1992) (quoting *State v. McGuire*, 297 N.C. 69, 81, 254 S.E.2d 165, 173 (1979)). Upon receiving this clear request, the trial court is required to ensure that the waiver is knowing, intelligent, and voluntary. *Id.* at 674, 417 S.E.2d at 476. The court does so by fulfilling the mandates of N.C.G.S. § 15A-1242, which requires the court to conduct a "thorough inquiry" and to be satisfied that (1) the defendant was clearly advised of the right to counsel, including the right to assignment of counsel; (2) the defendant "[u]nderstands and appreciates the consequences" of proceeding without counsel; and (3) the defendant understands what is happening in the proceeding as well as "the range of permissible punishments." N.C.G.S. § 15A-1242. The transcript in this case demonstrates that the trial court did not fully comply with the statutory mandate and the State concedes as much. *Simpkins*, 826 S.E.2d at 846. Therefore, because an effective waiver did

not occur, the Court of Appeals in this case decided a further issue, namely whether Mr. Simpkins, by his behavior, forfeited his right to counsel. *Id.* at 851.[4]

The dissent briefly states and then completely ignores the fact that the trial court found Mr. Simpkins had waived his right to counsel. In fact, the dissent states that the waiver requirements are "inapplicable here." However, in order to find that Simpkins waived his right to counsel, the trial court needed to conduct the inquiry required by N.C.G.S. § 15A-1242. The only reason this case is before us is that the State argues, contrary to the finding of the trial court, that Mr. Simpkins actually forfeited, rather than waived, his right to counsel. The decision in this case does not threaten the trial court's "discretion to ensure that legal proceedings are respected by all." Nor does it prevent the trial court from "provid[ing] orderly and just proceedings for all." Instead, it does two things. First, it reinforces the longstanding principle that a waiver of the right to counsel must be knowing, intelligent, and voluntary. Second, it provides trial courts with an additional avenue to ensure the orderly administration of justice,[5] which is to find forfeiture where it is impossible to fulfill the mandate of N.C.G.S. § 15A-1242.

---

[4] Because forfeiture is the issue presented to us by this case, we do not address (1) whether the trial court was correct that Simpkins waived his right to counsel; (2) whether "waiver by conduct" is a method by which a defendant may appropriately be required to proceed pro se, *see Blakeney*, 245 N.C. App. at 464–65, 782 S.E.2d at 96 (discussing waiver by conduct); or (3) whether a trial court, upon finding that a defendant has waived through conduct the right to counsel's assistance, must still satisfy the requirements of N.C.G.S. § 15A-1242.

[5] Justice, of course, also requires honoring the right to the effective assistance of counsel.

**Forfeiture of the right to counsel**

We have never previously held that a criminal defendant in North Carolina can forfeit the right to counsel. However, the Court of Appeals has recognized, in addition to waiver of counsel, that "a defendant who engages in serious misconduct may forfeit his constitutional rights to counsel." *State v. Forte*, 817 S.E.2d 764, 774 (N.C. Ct. App. 2018) (citing *Blakeney*, 245 N.C. App. at 460, 782 S.E.2d at 93). That court has noted that forfeiture is generally "restricted to situations involving egregious conduct by a defendant." *Blakeney*, 245 N.C. App. at 461, 782 S.E.2d at 94. We agree and hold that, in situations evincing egregious misconduct by a defendant, a defendant may forfeit the right to counsel.

The purpose of the right to counsel "is to assure that in any criminal prosecution, the accused shall not be left to his own devices in facing the prosecutorial forces of organized society." *Moran v. Burbine*, 475 U.S. 412, 430, 106 S. Ct. 1135, 1146 (1986) (cleaned up). It guarantees "that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland v. Washington*, 466 U.S. 668, 692, 104 S. Ct. 2052, 2067 (1984). It "safeguard[s] the fairness of the trial and the integrity of the factfinding process." *Brewer v. Williams*, 430 U.S. 387, 426, 97 S. Ct. 1232, 1253 (1977) (Burger, C.J., dissenting). Unfortunately, in rare circumstances a defendant's actions frustrate the purpose of the right to counsel itself and prevent the trial court from moving the case forward. In such circumstances, a defendant may be deemed to have forfeited the right to

counsel because, by his or her own actions, the defendant has totally frustrated that right. If one purpose of the right to counsel is to "justify reliance on the outcome of the proceeding," *Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067, then totally frustrating the ability of the trial court to reach an outcome thwarts the purpose of the right to counsel.

The Court of Appeals previously found forfeiture in *State v. Montgomery*, 138 N.C. App. 521, 530 S.E.2d 66 (2000). There, the court considered whether a defendant had been denied his right to counsel where the trial court failed to conduct the Section 15A-1242 inquiry and defendant was tried with standby counsel. *Montgomery*, 138 N.C. App. at 522–23, 530 S.E.2d at 67–68. The defendant in that case received appointed counsel on 7 January 1997. *Id.* at 522, 530 S.E.2d at 67. After switching counsel three times, the defendant appeared on his initially scheduled trial date, 16 February 1998, insisting that his then-current counsel be allowed to withdraw because "defendant no longer wished to be represented by him." *Id.* Over multiple pre-trial appearances it became clear that the defendant had refused to allow witnesses to meet with defense counsel; the defendant repeatedly disrupted the proceedings with profanity, receiving multiple findings of contempt; and the defendant assaulted his attorney in court. *Id.* at 522–53, 530 S.E.2d at 67–68. The court permitted counsel to withdraw and found that the defendant had waived his right to appointed counsel. *Id.* at 523, 530 S.E.2d at 68. When the defendant finally came on for trial on 6 April 1998, a month and a half after his original trial date, the

trial court permitted an appointed attorney to serve as standby counsel and defendant represented himself. *Id.* These facts demonstrate forfeiture of the right to counsel because the defendant's actions totally undermine the purposes of the right itself by making representation impossible and seeking to prevent a trial from happening at all.

In *State v. Brown*, the Court of Appeals considered whether the trial court erred in permitting the defendant to proceed pro se. *Brown*, 239 N.C. App. 510, 510, 768 S.E.2d 896, 897 (2015). There, the defendant "refus[ed] to answer whether he wanted assistance of counsel at three separate pretrial hearings" and "repeatedly and vigorously objected to the trial court's authority to proceed." *Id.* at 519, 768 S.E.2d at 901. Of particular importance to the question of forfeiture, it appears from the court's opinion that the defendant refused to participate in the proceedings and utilized the hiring and firing of counsel to delay the trial. *See id.* at 513–16, 768 S.E.2d at 898–900 (detailing defendant's refusal to give a clear answer as to desire for counsel and refusal to engage in waiver inquiry upon persistent inquiry by the court); *id.* at 516–517, 768 S.E.2d at 900 (detailing delay of nearly one month caused by defendant's attempts to dismiss counsel). By refusing to make an election as to whether to proceed with counsel and by using the appointment and firing of counsel to delay the proceedings, the defendant in *Brown* completely frustrated his own right to assistance, warranting a finding of forfeiture.

In *State v. Joiner*, the defendant instructed his counsel to withdraw and then offered "evasive and bizarre answers" when the trial court conducted a hearing to investigate the defendant's desire to represent himself. *Joiner,* 237 N.C. App. 513, 514–15, 767 S.E.2d 557, 558–59 (2014). In a subsequent hearing on the same issue, the defendant "refused to answer questions and declared that the trial court had no authority to conduct the trial." *Id.* at 515, 767 S.E.2d at 559. While the trial court attempted to conduct the inquiry required by N.C.G.S. § 15A-1242, the defendant refused to participate by refusing to acknowledge understanding, answering in contradictory ways, refusing to answer at all, yelling obscenities and being "otherwise extremely disruptive." *Id.* The trial court found that the defendant was "refus[ing] to engage appropriately simply as a means of delaying the proceedings." *Id.* While it is not relevant to the question of forfeiture, having occurred after the alleged deprivation of the right to counsel,[6] the defendant later threatened to "punch the judge in the 'f***ing face,' " he "refused to leave his cell on the second day of trial," he "threatened to stab an officer," and, for good measure, "defecated and smeared his feces on the cell walls" in addition to various other "extremely disruptive and belligerent" activity. *Id.* at 515–16, 767 S.E.2d at 559. Prior to this extremely disruptive behavior, the defendant had been evaluated to determine his competence

---

[6] *See Moore*, 362 N.C. at 326, 661 S.E.2d at 726 (holding information learned by court after waiver of right to counsel irrelevant to question of whether defendant's sixth amendment right violated).

to participate in a criminal proceeding and was found competent to stand trial. *Id.* at 514–15, 767 S.E.2d at 558.

If a defendant refuses to obtain counsel after multiple opportunities to do so, refuses to say whether he or she wishes to proceed with counsel, refuses to participate in the proceedings, or continually hires and fires counsel and significantly delays the proceedings, then a trial court may appropriately determine that the defendant is attempting to obstruct the proceedings and prevent them from coming to completion. In that circumstance, the defendant's obstructionist actions completely undermine the purposes of the right to counsel. If the defendant's actions also prevent the trial court from fulfilling the mandate of N.C.G.S. § 15A-1242, the defendant has forfeited his or her right to counsel and the trial court is not required to abide by the statute's directive to engage in a colloquy regarding a knowing waiver.

Serious obstruction[7] of the proceedings is not the only way in which a defendant may forfeit the right to counsel. Other courts have held that a defendant who assaults his or her attorney, thereby making the representation itself physically dangerous, forfeits the right to counsel. *See, e.g.*, *United States v. Leggett*, 162 F.3d 237, 240 (3d Cir. 1998) (finding of forfeiture where defendant "lunged at his attorney

---

[7] The Court of Appeals has previously stated that "[a]ny willful actions on the part of the defendant that result in the absence of defense counsel [constitute] a forfeiture of the right to counsel." *State v. Quick*, 179 N.C. App. 647, 650, 634 S.E.2d 915, 917 (2006). This statement is unsupported. *Quick* cites the Court of Appeals decision in *Montgomery*, which states nothing of the sort. *Montgomery*, 138 N.C. App. at 524, 530 S.E.2d at 69. Further, it is far too broad a statement to be consistent with the constitutional guarantee of the right to counsel and the law of this state.

and punched him in the head" and then "straddled him and began to choke, scratch and spit on him"); *Gilchrist v. O'Keefe*, 260 F.3d 87, 90 (2d Cir. 2001) (reviewing habeas claim where New York state court found forfeiture appropriate when defendant "punched [counsel] in the ear and ruptured his eardrum");[8] *cf. State v. Holmes*, 302 S.W.3d 831, 847–48 (Tenn. 2010) (after review of cases from many jurisdictions, concluding that defendant had not forfeited right to counsel where defendant pushed his finger at counsel and knocked counsel's glasses askew). In such a circumstance the trial court has permitted counsel to withdraw without appointing new counsel who would be subject to physical harm. Obviously, a defendant who intentionally seriously assaults their attorney has undermined the right to counsel.

Here, we agree with the Court of Appeals majority that Simpkins did not "engage in such serious misconduct as to warrant forfeiture of the right to counsel." *Simpkins*, 826 S.E.2d at 852. The dissent urges a holding that Simpkins forfeited his

---

[8] Then-Judge Sotomayor, writing for the panel in *Gilchrist*, provided the following warning:

> Although, of course, under no circumstances do we condone a defendant's use of violence against his attorney, had this been a direct appeal from a federal conviction we might well have agreed with petitioner that the constitutional interests protected by the right to counsel prohibit a finding that a defendant forfeits that right based on a single incident, where there were no warnings that a loss of counsel could result from such misbehavior, where there was no evidence that such action was taken to manipulate the court or delay proceedings, and where it was possible that other measures short of outright denial of counsel could have been taken to protect the safety of counsel.

260 F.3d at 89 (Sotomayor, J.).

right to counsel because, in the dissent's view, "it is clear that defendant would not accept the court's authority." However, the record belies that claim. Mr. Simpkins appeared for the first time in Superior Court at 9:41 a.m. on 7 June 2017. By 10:00 a.m., the trial court had determined Simpkins had waived his right to an attorney and the court appointed standby counsel to assist Simpkins in his defense. In that twenty minutes, Simpkins made an untimely objection, stating that there was "no proof of jurisdiction," asked questions of the court out of turn, stated, in response to the court's inquiry, that he "would like counsel that's not paid for by the State of North Carolina," asked four more questions of the court out of turn, and continued to speak out of turn and argue with the court. However, the transcript of the proceedings reflects that, when the court instructed Simpkins to stop asking questions, he did so. When the court asked Simpkins whether he wished to proceed with or without an attorney, he responded, for the most part, appropriately, first requesting "counsel that's not paid for by the State of North Carolina" and later acquiescing when the court suggested he be appointed standby counsel. Throughout the proceedings, including up to the point that he was required to proceed pro se, nothing in the record suggests that Simpkins was rude or disrespectful to the trial court. Simpkins's conduct, while probably highly frustrating, was not so egregious that it frustrated the purposes of the right to counsel itself. As a result, his conduct[9]

---

[9] The dissent, urging that we should find forfeiture, points to conduct which occurred both before Mr. Simpkins came on for trial and after Mr. Simpkins was denied the right to

did not amount to "such serious misconduct as to warrant forfeiture of the right to counsel." *See Blakeney*, 245 N.C. App. at 468, 782 S.E.2d at 98.

The State urges us to find that Simpkins forfeited his right to counsel largely based on the frivolous legal arguments about jurisdiction that Simpkins put forward throughout the proceeding. However, the State provides us with no reason to hold that a pro se defendant can be held to have forfeited the right to counsel because the defendant makes frivolous legal arguments. After all, a large part of the reason defendants have a right to counsel is to prevent them from making frivolous legal arguments. *See, e.g.*, *Burbine*, 475 U.S. at 430, 106 S. Ct. at 1146 (stating that right to counsel assures the accused is "not left to his own devices"). We reject the State's invitation to hold that a defendant, having been required to proceed without the assistance of counsel without the necessary advisories,[10] forfeits the right to counsel because he suffers the very injury the right is intended to prevent.

Further, the State argues that Simpkins forfeited his right to counsel because he failed to employ counsel before appearing for trial. However, the record evidence does not establish that Simpkins consistently refused to retain counsel in an attempt to delay the proceedings. "We are not here dealing with a situation where the record

---

counsel. It is the Superior Court proceedings, and what happened there, which are presented to us for review. As to conduct occurring after Mr. Simpkins proceeded without counsel, the question before us is whether Mr. Simpkins forfeited his right to counsel. It seems curiously perverse to rule, as the dissent suggests, that a defendant can be deemed to have forfeited his right to counsel based on conduct occurring after the defendant is denied counsel.

[10] *See* N.C.G.S. § 15A-1242.

shows that a criminal defendant, capable of employing counsel, has attempted to prevent his trial by refusing to employ counsel and also refusing to waive counsel and respond to the inquiry required by N.C.G.S. § 15A-1242." *State v. Bullock*, 316 N.C. 180, 186, 340 S.E.2d 106, 109 (1986). Instead, the record reflects that Simpkins engaged with the trial court throughout, coherently responding to the court's questions and ultimately agreeing to accept standby counsel. Further, on this record we simply cannot conclude that the failure to retain counsel was an attempt to delay the proceedings, and certainly not an attempt so egregious as to justify forfeiture of the right to counsel. The record is silent on whether Simpkins made any efforts to employ counsel. Here, where it appears that any question as to counsel was disposed of on the first day Simpkins was called to trial in Superior Court, there is simply no evidence of delay rising to the level of obstruction that would support a finding of forfeiture.

The State also argues that Simpkins was generally uncooperative and "intended to frustrate the orderly workings of the court." As we noted previously, defendant's behavior was probably very frustrating, and may have been intended to be frustrating. The trial court exhibited the utmost patience and should be commended for the even-handedness with which it conducted the proceedings. However, absent egregious conduct by the defendant, a defendant must be advised of the right to counsel, the consequences of proceeding without counsel, and "the nature of the charges and proceedings and the range of permissible punishments" before the

defendant can proceed without counsel. N.C.G.S. § 15A-1242. Thus, where, as here, the defendant's behavior was not so egregious as to prevent the court from proceeding, or to create a danger of any kind, forfeiture of the constitutional right to counsel has not occurred. The full inquiry required by statute should have taken place to determine if the defendant was knowingly waiving his right to counsel. The trial court should have engaged in the required colloquy prior to appointing standby counsel and permitting Simpkins to proceed pro se. *See State v. Dunlap*, 318 N.C. 384, 389, 348 S.E.2d 801, 805 (1986) (stating that standby counsel is not "a satisfactory substitute for the right to counsel in the absence of a knowing and voluntary waiver").

Conclusion

A trial court may find that a criminal defendant has forfeited the right to counsel. In such a case, the court is not required to follow the requirements of N.C.G.S. § 15A-1242, which the court would otherwise be required to do before permitting a defendant to proceed pro se. A finding that a defendant has forfeited the right to counsel requires egregious dilatory or abusive conduct on the part of the defendant which undermines the purposes of the right to counsel and prevents the trial court from complying with N.C.G.S. § 15A-1242. Such conduct is not apparent here, where the record reflects that the defendant was allowed to proceed without counsel within twenty minutes of the start of the proceeding, was generally cooperative with the court's requests, participated in the proceedings, and did not

utilize the right to counsel as a means of preventing the trial from moving forward. Because of the violation of his right to counsel under the Sixth Amendment to the U.S. Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution, the defendant is entitled to a new trial.

AFFIRMED.

Justice NEWBY dissenting.

This case implicates the trial court's authority over the courtroom and its responsibility to maintain the dignity and legitimacy of trial court proceedings. A criminal defendant has a constitutional right to counsel; however, that right may be lost. Here defendant continually refused to acknowledge the authority of the court to manage the case proceedings or the authority of the State to pursue defendant's criminal prosecution for misdemeanor crimes. By continually refusing to answer the trial court's questions and posing his own questions to the court, defendant demonstrated his unwillingness to accept the judicial process, forfeiting his right to an attorney. Nonetheless, the majority finds facts from a cold record to reverse the trial court's determination. The majority's decision undermines the trial court's fundamental authority over the courtroom. I respectfully dissent.

In July 2016, Officer Trent Middlebrook ran defendant's license plate through his database and discovered that defendant, who owned the vehicle, had a suspended driver's license and a pending warrant for his arrest. When Officer Middlebrook stopped defendant's vehicle and asked for his license and registration, defendant refused to provide the documents, continuously questioned the officer's authority, and behaved uncooperatively and belligerently. Officer Middlebrook then arrested defendant.

Defendant was initially tried in district court for, *inter alia*, resisting a public officer and failing to carry a registration card. While there is no transcript of those proceedings, the record contains an unsigned, undated "Waiver of Counsel" form with the following handwritten notation: "Refused to respond to . . . inquiry by the Court and mark as refusal at this point." The record also contains a Waiver of Counsel form dated 16 August 2016, signed by the district court, which includes a handwritten notation stating, "Defendant refused to sign waiver of counsel upon request by the Court." On that date, the district court found defendant guilty of resisting a public officer and failing to carry a registration card. The district court judgment sheet again twice notes that defendant had waived counsel.

Defendant appealed to superior court. On 6 March 2017, defendant moved to dismiss the case, asserting that the court lacked jurisdiction to conduct the proceedings. (This motion was denied at defendant's superior court trial.) Three months later, on 5 June 2017, defendant appeared before the court for a pre-trial hearing. On 7 June 2017, defendant's case came for trial in superior court. From the outset, defendant continued to object to the proceeding on jurisdictional grounds:

> [Defendant]: Objection, sir. I did not enter any pleas. Do I need to stand?
>
> The Court: What is the basis of your objection?
>
> [Defendant]: There is no proof of jurisdiction here. There hasn't been since last year. I've been coming here over a year, and there's no evidence of anything besides the allegation.

The Court: Well, sir, evidence is put on at the trial. So there is no evidence at this point.

[Defendant]: So how can you force someone here without evidence, sir?

The Court: You've been charged with a crime. And this is your day in court, your opportunity to be heard.

[Defendant]: Who's the injured party, sir?

The Court: Sir, it is not consistent with judicial proceedings for you to ask questions of the Judge. It's the Judge that will ask questions of you.

[Defendant]: Can I ask questions of the prosecution then?

The Court: Not at this time. Thank you, sir.

Defendant then contended that, though he had been coming to the court since August of 2016, he had never been advised of "anything," including his right to counsel. The trial court stated:

I see that in the Court's file there are waiver of counsel forms with notations that you refused to respond when you were notified of your right to an attorney, and so you were marked down as having waived an attorney.

You are charged with violations that could subject you to periods of incarceration. And so I would like to advise you that it is your right to have an attorney and if you cannot afford an attorney, the State can provide one for you. If you would like to apply for court-appointed counsel, we'll have you fill out an affidavit. If you wish to retain your own, you certainly have that opportunity as well.

Defendant then requested counsel "not paid for by the plaintiff" and questioned the court as to why there was no plaintiff in his case. The State objected, contending that defendant had time to retain private counsel because the matter had been pending for nearly a year and that defendant had been advised of his right to obtain an attorney on two to three occasions. Defendant then indicated that he would like to be appointed standby counsel, but thereafter three times questioned whether standby counsel would be licensed by the State of North Carolina, implying that if counsel were so licensed, counsel would be unfit to assist him. Defendant again questioned the court, inquiring to which court he should appeal if he did not "get the right judgment." When the trial court responded that it could not give legal advice from the bench, defendant asked, "How is that legal advice, sir?"

After the trial court identified a potential standby counsel, the following exchange occurred:

> [Defendant]: Do I have the right to be informed of the cause of nature of these proceedings?
>
> The Court: You are—you have been charged with some crimes. We are here for a trial in your cases. We are going through preliminary matters at this time. Specifically, we are addressing your right to an attorney. You've indicated that you would like to represent yourself but that you'd like standby.
>
> [Defendant]: No, sir. I did not say I want to represent myself. I did not. I asked for standby counsel just to assist me with what I have to ask you.
>
> The Court: So let me inform you of the difference

-4-

between standby counsel and retaining an attorney. If you wish to have an attorney appointed to represent you, you can ask for that.

[Defendant]: Uh-huh.

The Court: If you wish to represent yourself, you can proceed without the assistance of a standby attorney or with the assistance of a standby attorney. If you proceed with the assistance of a standby attorney—if you decide that later in the proceedings you wish to have the assistance of counsel, the standby attorney can step in for you on your behalf.

[Defendant]: Okay. You never answered my question.

The Court: Sir, this is—this is going to be your second and final warning. You're speaking out of order. You are free to make motions to the Court. You are not free to challenge the Court with extraneous statements. If you wish to address the Court, you need to make a motion by standing up and making a motion. This is the final warning you're going to get.

[Defendant]: What does extraneous mean?

The Court: Sir, I – I can't explain vocabulary to you.

The trial court then found that, "based on the prior proceedings, the waiver of counsel form, dated August 16, which indicates that defendant refused to sign a waiver of counsel upon request by the Court, signed by Judge Tucker," defendant had waived his right to counsel. The trial court then appointed standby counsel for defendant.

As the preliminary trial matters proceeded, defendant continued to question the court about various matters. Defendant then stated that he had been trying to enter a negotiated plea but wanted "evidence of jurisdiction." After conferring with standby counsel and deciding he did not want to enter a negotiated plea, defendant waived his right to, and released, standby counsel.

Throughout his trial, defendant repeatedly questioned the law enforcement witness about the State's authority and questioned the court about its authority. At the end of the trial, the jury convicted defendant of resisting a public officer and failing to exhibit/surrender his license.

Reviewed as a whole, it is clear that defendant would not accept the court's authority or the legitimacy of the court proceedings. He continued to pose questions to, and refused to answer questions from, multiple trial courts. Only the trial courts could evaluate defendant's tone of voice, emotions, body language, and other non-verbal communication cues accompanying his words to assess his sincerity in continuously refusing to answer the courts' questions. The trial court could truly understand defendant's actions to know when to protect the court proceedings from undue disruption and delay. Defendant's refusal to acknowledge the trial court's authority here and his repeated failure to respond to the various trial courts' inquiries disrupted the trial process and resulted in the forfeiture of his right to counsel.

While a criminal defendant's right to be represented by counsel is well-established, *State v. Bullock*, 316 N.C. 180, 185, 340 S.E.2d 106, 108 (1986), a defendant may relinquish the right to counsel in certain situations, *State v. Montgomery*, 138 N.C. App. 521, 524, 530 S.E.2d 66, 68–69 (2000).[1] One way a defendant may relinquish his right to be represented by counsel is through forfeiture. *State v. Quick*, 179 N.C. App. 647, 649–50, 634 S.E.2d 915, 917 (2006). A defendant may forfeit his right to counsel "when [he or she] engages in . . . serious misconduct." *State v. Blakeney*, 245 N.C. App. 452, 460, 782 S.E.2d 88, 93 (2016). Courts have recognized forfeiture by misconduct when a defendant (1) engages in "flagrant or extended delaying tactics, such as repeatedly firing a series of attorneys;" (2) employs "offensive or abusive behavior, such as threatening counsel, cursing, spitting, or disrupting proceedings in court;" or (3) "refus[es] to acknowledge the trial court's

---

[1] Though inapplicable here, one way a defendant may relinquish his right to counsel is by waiving this right. *State v. Thomas*, 331 N.C. 671, 673–74, 417 S.E.2d 473, 475–76 (1992). If a defendant chooses to waive his right to counsel, the trial court "must determine whether the defendant knowingly, intelligently, and voluntarily waives the right." *Id.* at 674, 417 S.E.2d at 476. If a defendant chooses to waive his right to counsel, the trial court may determine whether defendant's waiver is knowingly, intelligently, and voluntarily made by asking whether the defendant (1) "[h]as been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;" (2) "[u]nderstands and appreciates the consequences of this decision;" and (3) "[c]omprehends the nature of the charges and proceedings and the range of permissible punishments." N.C.G.S. § 15A-1242 (2019). Waiver by express oral or written consent, however, cannot be the only method of relinquishing one's right to counsel. Having only one method of relinquishing one's right to counsel would halt proceedings where a defendant refuses to answer the trial court's inquiries despite its diligent effort to obtain specific responses from the defendant.

jurisdiction or participate in the judicial process, or insist[s] on nonsensical and nonexistent legal 'rights.' " *Id.* at 461–62, 782 S.E.2d at 94.

Though a defendant's right to representation is well-established, a trial court has a "legitimate interest in guarding against manipulation and delay" in its proceedings. *United States v. Goldberg*, 67 F.3d 1092, 1098 (3d Cir. 1995). "The trial court understands courtroom dynamics in ways that cannot be gleaned from the cold transcript . . . ." *See United States v. Birchette*, 908 F.3d 50, 58 (4th Cir. 2018) (discussing the trial court's discretion in the context of juror interviews), *cert. denied*, 140 S. Ct. 162, 205 L. Ed. 2d 51 (2019). Thus, as this Court has noted in numerous contexts, some decisions are best made by the trial court. *See, e.g., State v. Taylor*, 362 N.C. 514, 527–28, 669 S.E.2d 239, 254 (2008) (noting that trial courts have the ability to observe a prosecutor's demeanor and questioning of prospective jurors firsthand before ruling on a *Batson* challenge); *State v. Hill*, 347 N.C. 275, 297, 493 S.E.2d 264, 276 (1997) (noting that a trial court "is in the best position to determine whether the degree of influence on the jury was irreparable" in order to determine whether a mistrial is warranted); *State v. Wilson*, 322 N.C. 117, 127, 367 S.E.2d 589, 595 (1988) (stating that the trial court is in the best position to determine whether to sequester because only the trial court can "determine the climate surrounding a trial and it is [the trial court that] is in the best position to determine if a shield is necessary to protect jurors, and thus the defendant, from extraneous influences"). Because of the institutional advantage afforded to trial courts, such as the ability to

observe a defendant's behavior, evaluate his tone of voice, and assess the sincerity of his conduct, trial courts should be allowed the authority to maintain reasonable control over their courtrooms.

Though not binding on this Court, the decision of the Court of Appeals in *State v. Leyshon*, 211 N.C. App. 511, 710 S.E.2d 282, *appeal dismissed*, 365 N.C. 338, 717 S.E.2d 566 (2011), is instructive. There the defendant refused to respond to the trial court's inquiry as to whether defendant wished to waive his right to counsel. *Id.* at 512–13, 710 S.E.2d at 285. At a second hearing, the defendant again refused to answer the trial court and instead challenged the court's jurisdiction. *Id.* at 513, 710 S.E.2d at 285. The Court of Appeals determined that the defendant's refusal to answer and his contradictory statements were insufficient to waive defendant's right to counsel. *Id.* at 517, 710 S.E.2d at 287. Nonetheless, the court noted that defendant refused to "respond to the court's inquiry regarding whether he wanted an attorney," refused to respond to the trial court's inquiry at a later hearing, and "continued to challenge the court's jurisdiction." *Id.* at 518–19, 710 S.E.2d at 288. The Court of Appeals thus concluded that the defendant, through his conduct, had forfeited his right to counsel. *Id.* at 519, 710 S.E.2d at 288–89.

Similar to *Leyshon*, defendant's continuous behavior here shows that he forfeited his right to counsel. At each stage of the proceeding, defendant has shown his unwillingness to acknowledge the authority of various trial courts in conducting their respective proceedings. When Officer Middlebrook initially stopped defendant,

defendant refused to comply with the officer's requests, and he continuously questioned the authority of the officer. Though there is no transcript of the district court proceedings, there are two notations in the record that defendant waived counsel because of his refusal to respond to the district court's inquiries. Once defendant's case came for trial in superior court, defendant expressed his unwillingness to participate in the proceedings by continuously questioning that court's authority. The superior court attempted to determine whether defendant was waiving his right to counsel. Instead of answering the superior court's inquiry, however, defendant questioned the court, said he would like standby counsel but then questioned standby counsel's licensure, asked the trial court how to appeal his case, and asked to be informed "of the cause of the nature of these proceedings." Notably, defendant expressly waived his right to standby counsel shortly after standby counsel's appointment.

Moreover, despite defendant's desire to have an attorney "not paid for by the plaintiff," defendant failed to retain an attorney in the more than eight months between the district court and superior court proceedings. Defendant had attended a hearing earlier in the week and knew at a minimum that he would need to be in Court on 7 June 2017. This instance was not defendant's first interaction with the legal system; defendant had four prior distinct encounters with the legal system resulting in convictions in North Carolina between 2014 and 2016. Additionally, defendant had three prior convictions in South Carolina. Here defendant had already been tried in

district court for resisting a public officer and failing to carry a registration card. Given defendant's repeated refusal to participate in the trial court proceedings below, and in light of the misdemeanor charges for which defendant was tried, the trial court could appropriately determine that defendant's conduct was intended to disrupt the court's legitimate processes.

While "[a]n appellate court reviews conclusions of law pertaining to a constitutional matter de novo," *State v. Bowditch*, 364 N.C. 335, 340, 700 S.E.2d 1, 5 (2010) (citing *State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008)), each case presents unique facts which must be assessed by the trial court. An appellate court does not find facts; the authority to find facts resides with the trial court which has face-to-face interaction with the parties. Here the majority assumes itself to be the finder of fact, views a cold written record without having been present for any of the trial court proceedings, and finds that there is no suggestion that defendant was "rude or disrespectful" during the proceedings. Only trial courts can observe a defendant's demeanor and interpret the non-verbal communication cues accompanying his words, which might not seem rude or disrespectful from a written transcript in a cold record on appeal. In simply reading the record, appellate courts lack the necessary context accompanying a defendant's words and thus are not designated as finders of fact. Employing the proper standard of review in this case and looking at defendant's conduct as a whole, the trial court's determination that defendant should proceed without an attorney is supported by competent evidence in

the record.[2] The trial court was in the best position to make such a determination given defendant's continual refusal to recognize the legitimacy of the legal process throughout multiple stages in the court proceedings.

Trial courts have a "legitimate interest in guarding against manipulation and delay." *Goldberg*, 67 F.3d at 1098. Given this legitimate interest, a trial court must be afforded discretion to ensure that legal proceedings are respected by all, which in turn enables the court to provide orderly and just proceedings for all. Because defendant forfeited his right to counsel by his own conduct, I respectfully dissent.

Justice MORGAN joins in this dissenting opinion.

---

[2] While the trial court concluded that defendant "waived" his right to counsel, the record here shows, as the State argued, that defendant actually forfeited his right to counsel.